UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
**SF ENTITIES, INC.**,

              Plaintiffs,

– against –

**DAVID GAMBURG** and
**COVA LABORATORIES, LLC**,

              Defendants.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

23-CV-4881 (AMD) (LKE)

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings this diversity action for breach of contract, unjust enrichment, promissory estoppel, account stated, and failure to pay him wages in violation of the New York City Freelance Isn't Free Act ("FIFA"), N.Y.C. Admin. Code § 20-927 *et seq*. (ECF No. 1.) The defendants bring a counterclaim, which the Court construes as a breach of contract claim. (ECF No. 13 at 9.)[1] Before the Court are the parties' cross motions for partial summary judgment. For the reasons below, the plaintiff's motion is denied, and the defendants' motion is granted.

## BACKGROUND[2]

In 2022 Solomon Fraser established the plaintiff, SF Entities Inc. ("SF Entities"), for his business activities; Fraser is the only owner, officer, and employee of SF Entities. (ECF No. 46,

---

[1] Although they do not allege a specific cause of action, the defendants allege that the plaintiff sent Cova Laboratories samples with false insurance information, that the plaintiff knew the information was false, that Cova Laboratories was deprived of funds as a result, and that the plaintiff's conduct was a breach of the parties' agreement. (ECF No. 13 at 9.)

[2] The facts are drawn from the parties' Rule 56.1 statement and counterstatement of facts, which the defendants filed with their motion. (ECF No. 41, Parties' Combined Rule 56.1 Statements and Counterstatements of Material Facts ("Combined 56.1").) The plaintiff filed an affidavit from Solomon Fraser, its "corporate representative and sole owner," because the parties "were unable to identify any scope of agreement of 'undisputed statement.'" (ECF No. 45-1 at 6; *see* ECF No. 46, Affidavit of

Fraser Aff. ¶¶ 1–6.) In late 2022, the plaintiff contacted David Gamburg about operating a remote collection site for COVID-19 testing. (ECF No. 41, Combined 56.1 ¶¶ 7–8; ECF No. 43-2, Deposition of David Gamburg ("Gamburg Dep.") at 63:25–64:2.)[3] The parties disagree about what happened next. Fraser claims that he and Gamburg discussed a "Specimen Collection Agreement," the terms of which included a $33 per test administrative fee, which Fraser would get from patients. (ECF No. 46, Fraser Aff. ¶ 13.) Fraser maintains that he and Gamburg agreed to change the agreement to provide hourly rather than per-test payment; in practice, however, Fraser would be paid $35 for each test to "avoid having it appear that [Fraser] was receiving a kickback on a per-test basis." (*Id.* ¶¶ 15–16.) The parties agree that they never finalized or signed a "Specimen Collection Agreement." (ECF No. 41, Combined 56.1 ¶¶ 9–12; ECF No. 46, Fraser Aff. ¶ 14). The defendants also say that there is no "authentic copy of" the "alleged [specimen collection] agreement." (ECF No. 41, Combined 56.1 ¶¶ 9–12.)

The parties agree that Cova Laboratories LLC and SF entities entered into a different agreement — a services agreement — "effective retroactively as of August 1, 2022," under which the plaintiff would "assist in the operation of the patient service centers, including specimen collection activities and day-to-day administrative and operational activities" related to COVID-19 testing. (ECF No. 41, Combined 56.1 ¶ 1; ECF No. 43-3, Services Agreement ("Serv. Agreement") at 2.) Fraser maintains that the agreement governed their relationship, "except for the side understanding that the 'hourly rate' was a sham . . . and that in reality

---

Solomon Fraser ("Fraser Aff.").) The Court also considers the facts in this affidavit but notes that they are disputed.

[3] Although the plaintiff claims in its Rule 56.1 statement that Fraser contacted Gamburg (ECF No. 41, Combined 56.1 ¶ 7), Fraser says in his affidavit that a third party "arranged a meeting" between Fraser and Gamburg to discuss whether Fraser could provide direct rather than indirect service. (ECF No. 46, Fraser Aff. ¶¶ 7–9.)

[Fraser] would be paid $35.00 for each test [] performed." (ECF No. 46, Fraser Aff. ¶ 19.) The defendants dispute that claim.

From December 2022 to February 2023, Fraser collected COVID-19 specimens from patients and submitted the samples to the defendants. (ECF No. 41, Combined 56.1 ¶ 26; ECF No. 46, Fraser Aff. ¶ 23.) The defendants claim that some of the samples were not covered by insurance and that the plaintiff did not collect the samples properly. (ECF No. 41, Combined 56.1 ¶ 26.) The plaintiff does not address this claim directly, but says that the "Plaintiff was entitled to compensation for their services regardless of whether any individual test was paid for by insurance or not." (*Id.* ¶ 27.) Fraser created invoices for his services and sent them through a portal that the defendants operated. (ECF No. 46, Fraser Aff. ¶¶ 24–25.) The parties agree that the defendants paid the following invoices in full: $7,070 on January 1, 2023, $14,245 on January 15, 2023, $11,000 on January 24, 2023, $17,500 on February 1, 2023, and $11,000 on February 13, 2023. (ECF No. 41, Combined 56.1 ¶¶ 16–25.) However, Fraser lists different dates for the invoices in his affidavit and claims that Gamburg paid only the first two invoices in full; Fraser asserts that in mid-January 2023, Gamburg said he would "cap billing at $11,000" and that any "outstanding amounts would be taken care of at the end of each month." (ECF No. 46, Fraser Aff. ¶¶ 25–33.) Fraser says that he excluded costs from the subsequent invoices to keep each invoice under $11,000, and in February 2023 he continued test sampling but did not bill Gamburg. (*Id.* ¶¶ 29–34.)

According to Fraser, Gamburg told him on March 3, 2023 that the "relationship is over." (*Id.* ¶ 35.) On March 6, 2023, Fraser "received a formal Letter of Termination." (*Id.* ¶ 35.) On April 10, 2023, the plaintiff sent the defendants a final invoice for $89,705.00. (*Id.* ¶¶ 38–39; ECF No. 41, Combined 56.1 ¶¶ 1, 28; *see also* ECF No. 46-14, SF Entities Inc. Invoice dated

3

April 10, 2023 ("April Invoice").)  The defendants agree that the plaintiff sent them the invoice, but say that it is "false and unsupported," and that the plaintiff created it after the services agreement was "validly cancelled." (ECF No. 41, Combined 56.1 ¶¶ 2, 28.)  The defendants did not pay this invoice.  (*Id.* ¶ 3; ECF No. 46, Fraser Aff. ¶ 40.)

## LEGAL STANDARD

Summary judgment is appropriate if the parties' submissions — including pleadings, deposition transcripts, affidavits, and other material in the record — show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "A fact is material if it 'might affect the outcome of the suit under the governing law,'" and a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The movant has the burden of demonstrating that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020) (citation omitted).

A court "may find for the moving party 'only if [it] conclude[s] that on the record presented, considered in the light most favorable to the non-moving party, no reasonable fact-finder could find in its favor.'" *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (cleaned up) (quoting *Capobianco v. City of N.Y.*, 422 F.3d 47, 54–55 (2d Cir. 2005)).  A court should not ask whether "the evidence unmistakably favors one side or the other but whether a fair-minded fact-finder could return a verdict for the non-moving party on the evidence

4

presented." *Id.* (cleaned up) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).

"Cross-motions for summary judgment do not alter the basic standard." *Basora v. City of Poughkeepsie*, No. 22-CV-3300, 2025 WL 50322, at *3 (S.D.N.Y. Jan. 8, 2025). "When both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party." *Roberts*, 68 F.4th at 88 (2d Cir. 2023) (cleaned up) (quoting *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)); *see also Coutard v. Municipal Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017) ("The fact that both sides have moved for summary judgment does not guarantee that there is no material issue of fact to be tried and that one side or the other is entitled to that relief."). Where, as here, the parties cross-move for summary judgment, the Court "evaluates each party's motion 'on its own merits,' and 'all reasonable inferences' are drawn 'against the party whose motion is under consideration.'" *Roberts*, 68 F.4th at 88 (quoting *Morales*, 249 F.3d at 121).

## DISCUSSION

### I. Applicability of FIFA

FIFA "provide[s] legal protections for freelance workers against nonpayment for work performed." *Chen v. Romona Keveza Collection LLC*, 208 A.D.3d 152, 155 (1st Dep't 2022). Under FIFA, a "hiring party must pay [a] freelance worker by the date specified in the contract or 'no later than 30 days after the completion of the freelance worker's services' if no date is specified." *Id.* (quoting N.Y.C. Admin. Code § 20-929(a)). "A FIFA action differs from an ordinary contract action in that it allows a plaintiff to recover double damages, injunctive relief, and reasonable attorneys' fees and costs from hiring parties who violate FIFA's substantive protections in certain circumstances." *Frisch v. Likeopedia, LLC*, No. 23-CV-3904, 2024 WL 3938345, at *8 (S.D.N.Y. Aug. 26, 2024).

5

According to the plaintiff, FIFA applies to its claims because there is no dispute that the plaintiff is a "freelance worker" under the statute. (ECF No. 45-1 at 15–17.) The plaintiff also argues that there is no dispute that Gamburg is a "hiring party" under the statute. (*Id.* at 17–19.) The defendants do not agree. They say that the plaintiff is not a "freelance worker" because the plaintiff is a multi-person corporation, not an independent contractor, and that FIFA does not apply because the plaintiff is incorporated in Rockland County, beyond the reach of FIFA. (ECF No. 47-1 at 8–10.) The defendants also seek dismissal of the claims against Gamburg, because he is not a "hiring party" under the statute. (ECF No. 43-4 at 7–8.)

a. **"Freelance Worker" Under FIFA**

The plaintiff asserts that Fraser is the sole owner of SF Entities, that the defendant Gamburg "never seriously claimed that he believed SF Entities to be anything other than a single-owner corporation," and that, in any event, the definition does not depend on the subjective understanding of the hiring party. (ECF No. 45-1 at 15–16.) The plaintiff also asserts that the services agreement provides that the plaintiff was an independent contractor. (*Id.* at 16–17.)

Under FIFA, a "freelance worker" is "any natural person or any organization composed of no more than one natural person, whether or not incorporated or employing a trade name, that is hired or retained as an independent contractor by a hiring party to provide services in exchange for compensation." N.Y.C. Admin. Code § 20-927. The services agreement states that SF Entities "shall be in the relation of an independent contractor" to Cova Laboratories. (ECF No. 43-3, Serv. Agreement § 7.3.) Thus, there is no question that the plaintiff was "hired or retained as an independent contractor." N.Y.C. Admin. Code § 20-927.

There is, however, a factual dispute about whether the plaintiff is an "organization composed of no more than one natural person." *Id.* The plaintiff asserts that it is a "single-

6

owner Corporation" (ECF No. 45-1 at 16), but even if Fraser is the only owner, the relevant number under FIFA is the number of people in the organization, not the number of owners. *See Frisch v. Likeopedia, LLC*, No. 23-CV-3904, 2024 WL 3938345, at *9 (S.D.N.Y. Aug. 26, 2024) (plaintiff qualified for FIFA protections because he entered into agreement "as one natural person, not part of a company or organization with additional members or employees"). Fraser states in his affidavit that he is the plaintiff's only owner, officer, and employee (ECF No. 46, Fraser Aff. ¶¶ 5–6), but the defendants dispute this. Indeed, the plaintiff filed an affidavit in lieu of a 56.1 statement of facts because the parties "were unable to identify any scope of agreement of 'undisputed statement.'" (ECF No. 45-1 at 6.) Gamburg testified that Fraser told him that there were multiple employees working for SF Entities (ECF No. 47-1 at 9–10; ECF No. 43-2, Gamburg Dep. at 71:13-21). The plaintiff concedes that "[d]uring the COVID Emergency, Mr. Fraser may have had a 'large company' and [was] working with a 'whole team of people that he managed.'" (ECF No. 45-1 at 7.) The plaintiff says that Fraser's representations to Gamburg are irrelevant because they describe "alleged past projects," not the plaintiff's project with the defendants. (*Id.*) The plaintiff also cites Gamburg's testimony that he did not talk to Fraser "about the structure" of SF Entities. (*Id.*) On a motion for summary judgment, however, the Court does not resolve these factual disputes. It is a jury's role to assess the credibility of these statements. *See Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010))). Accordingly, the Court denies summary judgment on the questions of whether the plaintiff was a "freelance worker" under FIFA.

### b. "Hiring Party" under FIFA

The parties also dispute whether Gamburg was a "hiring party" under FIFA, and thus personally liable under the statute. The defendants argue in their opposition that there are factual disputes about whether Gamburg was a "hiring party" (ECF No. 47-1 at 10–13), but assert in their motion for summary judgment that that there is no factual dispute, and that the parties agree that Gamburg was not a hiring party (ECF No. 43-4 at 7–8). The bottom line, however, is that the defendants assert that Gamburg is not a party to the services agreement. *Id.* The plaintiff, on the other hand, asserts that he is.

A "hiring party" under FIFA is "any person who retains a freelance worker to provide any service."[4] N.Y.C. Admin. Code § 20-927. In *Frisch v. Likeopedia, LLC*, No. 23-CV-3904, 2024 WL 3938345 at *9 (S.D.N.Y. Aug. 26, 2024), the court found that Frisch could not sue the LLC's manager personally because "the Consulting Agreement was formed between [Frisch] and [the LLC]." "FIFA imposes obligations only on a 'hiring party,' and it was [the LLC] — not [the manager] himself — that hired [Frisch]." *Id.* The manager was not a "hiring party" under FIFA, even though he negotiated with the plaintiff and signed the consulting agreement on the LLC's behalf. *Id.* at *1.

For the same reasons, Gamburg is not a "hiring party" under FIFA. Although Gamburg signed the services agreement on behalf of Cova Laboratories as its Chief Executive Officer, the agreement is between Cova Laboratories and SF Entities, not Gamburg and SF Entities. (*See e.g.*, ECF No. 43-3, Serv. Agreement § 2 ("Obligations of the Corporation"); §3.1 ("All such services shall be paid by the Corporation"); § 7.3 ("the Service Provider shall be in the relation of an independent contractor to the Corporation").) Moreover, aside from his signature,

---

[4] There are certain exclusions for government entities.

8

Gamburg's name does not appear in the agreement. Cova Laboratories, not Gamburg, "retain[ed]" the plaintiff. N.Y.C. Admin. Code § 20-927. This conclusion is consistent with FIFA's purpose: "to protect freelance workers who were denied compensation by *inter alia* imposing double damages on companies that breached agreements." *Turner v. Sheppard Grain Enters., LLC*, 68 Misc. 3d 385, 387 (N.Y. Sup. Ct. 2020).[5]

### c. Scope of FIFA

The defendants also maintain that FIFA does not cover the plaintiff because its principal place of business is not in New York City. (ECF No. 47-1 at 8–9.) According to the defendants, FIFA covers only work with a substantial connection to or that is performed in New York City; while the plaintiff says its principal place of business is Brooklyn, its certificate of incorporation says that it is registered in Rockland County. *Id.* Accordingly, the defendants say, there is factual dispute about whether FIFA applies. *Id.*

"FIFA does not provide any guidance or definitions as to its scope or applicability." *Turner*, 68 Misc. 3d at 387. "FIFA does not clarify whether individuals must have physical locations in N.Y.C., mailing addresses in N.Y.C., or simply conduct business regularly in N.Y.C., in order to meet FIFA's definition of freelance workers or hiring parties. FIFA may apply to work performed outside N.Y.C. depending on the particular circumstance, including whether some of the work is performed in N.Y.C, whether the freelance worker was hired or retained in N.Y.C, and whether the hiring party's operations are within N.Y.C." *Id.* (quoting

---

[5] The plaintiff cites *Varn v. Orchestrade, Inc.*, No. 19-CV-2875, 2020 WL 13558690 (E.D.N.Y. Mar. 30, 2020), but the issue there was whether Varn was covered by FIFA. The court did not address whether the CEO was a hiring party, only whether it had jurisdiction over him. *Id.* at *6. In *Eelco Van Den Berg v. Clinton Hall Holdings, LLC*, No. 653156/2018, 2019 WL 2995777, at *3 (N.Y. Sup. Ct. July 9, 2019), which the plaintiff also cites, the issue was whether the hiring party was the named defendant corporation or "a separate corporate entity whom plaintiff did not name in the action." While the court mentioned the "agent" who communicated with the plaintiff "on behalf of" the hiring party, it did not say that the agent was a hiring party under FIFA. *Id.* at *4.

9

Caitlin M. Baranowski, *Freelance Isn't Free: The High Cost of New York City's Freelance Isn't Free Act on Hiring Parties*, 12 Brook. J. Corp. Fin. & Com. L. 439, 443 (2018)).  In *Turner*, the court applied the "impact requirement"[6] and concluded that Turner was "not entitled to the protections of FIFA because he is not a New York City resident and he performed the vast majority of his work from Connecticut."  *Id.* at 388; *see id.* (to satisfy the "impact requirement," "the nonresident plaintiff" must "demonstrate that the alleged discriminatory conduct had an impact within the city" (quoting *Hoffman v. Parade Publs.*, 15 N.Y.3d 285, 290 (2010))).  Turner "had a few meetings in New York City," "had interactions with supervisors in New York City," and "was fired by an employee . . . based in New York City," which was "not enough to satisfy the impact requirement."  *Id.* at 389.

The 56.1 statements do not include any information about where the plaintiff worked.  In his affidavit, Fraser claims he provided the testing services in Brooklyn (ECF No. 46, Fraser Aff. ¶ 21; *see also* ECF No. 45-1 at 12), but as the defendants note, the plaintiff's exhibits show it was incorporated in and had a service of process address in Rockland County, not New York City.  (ECF No. 46-1, New York Department of State Filing Receipt; ECF No. 46-2, S.F. Entities Inc. Certificate of Incorporation.)  Thus, there are factual questions about whether the impact of the plaintiff's work in New York City was sufficient to qualify for protections under FIFA.

**II.     Breach of Contract and Account Stated**

The plaintiff argues that the Court should issue judgment in the plaintiff's favor on the First and Fifth Causes of Action because the defendants do not have a "legitimate objection" to the April invoice.[7]  (ECF No. 45-1 at 19.)

---

[6] New York Court of Appeals applied this standard for claims under the New York City Human Rights Law.  *Turner*, 68 Misc. 3d at 388.

[7] The Court assumes that the plaintiff means the fourth cause of action — the "Account Stated" cause of action (ECF No. 1 ¶¶ 94–103); it argues that the validity of the invoice "under a theory of . . . Account

Like the plaintiff's other claims, there are factual disputes about the April invoice that preclude summary judgment on the breach of contract and account stated claims. The parties agree that the plaintiff submitted the April 10, 2023 invoice and that the defendant did not pay it. (ECF No. 41, Combined 56.1 ¶¶ 28–29.) The defendants "deny the term final invoice as the contract had concluded and been validly cancelled by defendant Cova Laboratories LLC." (*Id.* ¶ 28.) The plaintiff asserts that the contract was terminated in March 2023, and that the April invoice covers January through March 2023. (ECF No. 46, Fraser Aff. ¶¶ 35–39; ECF No. 46-14, April Invoice.) There is nothing in the 56.1 statements about the details of the termination.[8] Only the Fraser affidavit discusses the termination, which as noted above, means that these facts are disputed. The defendants also say that the invoice is fraudulent, because the amount that the plaintiff says is due — $89,705 — includes money that the plaintiff admits in its Rule 56.1 statement that the defendants already paid. (ECF No. 47-1 at 14.) Indeed, Fraser says in his affidavit that the $89,705 figure includes "unpaid" amounts from the January 15, 2023 and February 2, 2023 invoices (ECF No. 46, Fraser Aff. ¶¶ 26, 30, 37), but the plaintiff's 56.1 statement says that the defendants paid the January 15, 2023 invoice in full (ECF No. 41, Combined 56.1 ¶ 19), and refers to a February 1, 2023 invoice, which the defendants paid, not one from February 2 (*id.* ¶ 22). These inconsistencies, as well as the fact that the plaintiff filed the affidavit because the parties "were unable to identify any scope of agreement of 'undisputed statement,'" preclude summary judgment.

---

Stated" is not disputed. (ECF No. 45-1 at 19.) The fifth cause of action is the FIFA claim. As explained above, there are factual disputes that preclude summary judgment.

[8] The defendants attached a termination letter to their opposition to the plaintiff's motion for summary judgment (*see* ECF No. 47-4) but did not refer to it in their 56.1 statement.

11

**III.     Piercing the Corporate Veil**

The defendant also argues that Gamburg should be dismissed because the plaintiff cannot pierce the corporate veil. Aside from this somewhat confusing reference — "the argument for Dr. Gamburg's liability is primarily from his role as the 'hiring party', and not the corporate-piercing theory strawman knocked down by the Defendant" (ECF No. 48 at 2) — the plaintiff does not address the substance of the argument. Thus, he concedes it. *See Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief."); *Canas v. Whitaker*, No. 19-CV-6031, 2019 WL 2287789, at *6 (W.D.N.Y. May 29, 2019) ("It is well settled in this Circuit that 'a plaintiff effectively concedes a defendant's arguments by his failure to respond to them'" (cleaned up)).

In any event, the plaintiff has not met his burden to pierce the corporate veil. Under New York law, "the corporate form is accorded great respect and is set aside only when necessary to avoid a manifestly inequitable result." *Pado, Inc. v. SG Trademark Holding Co. LLC*, 537 F. Supp. 3d 414, 424 (E.D.N.Y. 2021) (quoting *Koninklijke Philips Elecs. N.V. v. The ADS Grp.*, 694 F. Supp. 2d 246, 251 (S.D.N.Y. 2010)). "[V]eil-piercing applies to LLCs." *Bd. of Managers of 325 Fifth Ave. Condo. v. Cont'l Residential Holdings LLC*, 149 A.D.3d 472, 475 (1st Dep't 2017). A party seeking to pierce a corporate veil must allege "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Pado, Inc.*, 537 F. Supp. 3d at 424 (quoting *The ADS Grp.*, 694 F. Supp. 2d at 251); *see also Cont'l Residential Holdings LLC*, 149 A.D.3d at 475 ("However, the party seeking to pierce the corporate veil must establish that the *owners,* through their domination, abused . . . the corporate form to perpetrate a wrong or injustice against that party such that a

12

court in equity will intervene." (citation omitted) (cleaned up) (emphasis in original)).  That party "must come forward with factual allegations as to both elements of the veil-piercing claim." *Pado, Inc.*, 537 F. Supp. 3d at 424 (quoting *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005)).  The party seeking to pierce the corporate veil has a "heavy burden."  *Sheridan Broadcasting Corp. v. Small*, 19 A.D.3d 331, 332 (1st Dept. 2005) (citation omitted).  "[A] simple breach of contract, without more, does not constitute a fraud or wrong warranting the piercing of the corporate veil."  *Etage Real Est. LLC v. Stern*, 211 A.D.3d 632, 634 (1st Dep't 2022).

      The plaintiff has not made sufficient "factual allegations as to both elements of the veil-piercing claim" to hold Gamburg personally liable for a business relationship between the plaintiff and Cova Laboratories.  The plaintiff does not allege that Gamburg is an owner of Cova Laboratories.  More important, the plaintiff does not claim that the defendants committed fraud.  *See Max Markus Katz, P.C. v. Sterling Nat'l Bank*, 206 A.D.3d 533, 535 (1st Dep't 2022) (defendant did not meet burden to pierce the corporate veil because his counterclaims "contain no particularized statements detailing fraud or other corporate misconduct").  Accordingly, the claims against Gamburg are dismissed.

## CONCLUSION

For these reasons, the plaintiff's motion is denied, and the defendants' motion is granted. The claims against the defendant David Gamburg are dismissed.[9] The parties are directed to file a joint pretrial order that complies with the Court's Individual Rules within 30 days of the date of this Memorandum Decision and Order.

**SO ORDERED.**

s/Ann M. Donnelly<br>
ANN M. DONNELLY<br>
United States District Judge

Dated: Brooklyn, New York
      September 11, 2025

---

[9] The plaintiff's argument about the defendants' counterclaims is moot because the defendants withdrew their counterclaims at the January 7, 2025 pre-motion conference. (ECF No. 47-1 at 15.) For the avoidance of doubt, the defendants' counterclaims are dismissed.